299 P.2d 638

A. J. SILVA and Jane Doe Silva, his wife, Appellants,

v.

Herman E. DE MUND, d/b/a Arizona Credit Company; Wayne Bateman and Jane Doe Bateman, his wife; and Ernest Ralls and Jane Doe Ralls, his wife, Appellees.

No. 6095.

Supreme Court of Arizona.

July 10, 1956.

48

David O. Brown, Mesa, for appellants.

Jerman & Jerman and Charles E. Butler, Phoenix, for appellee Herman E. DeMund.

McKesson & Renaud and J. Gordon Cook, Phoenix, for appellees Wayne Bateman and Jane Doe Bateman and Ernest Ralls and Jane Doe Ralls.

WINDES, Justice.

· Appellee Herman E. DeMund, doing business as Arizona Credit Company, filed complaint against Wayne's Motor Sales, a partnership, Wayne Bateman and Jane Doe Bateman, his wife, A. J. Silva and Jane Doe Silva, his wife; and Ernest Ralls and Jane Doe Ralls, his wife, claiming that defendants owed plaintiff $2,781.71 as the balance due from defendants upon certain conditional sales contracts which they had assigned to the plaintiff and upon a trust receipt agreement executed in favor of plaintiff. The complaint prayed for this amount together with interest at eight percent per annum from the respective dates that each amount became due under the respective contracts. Defendants Bateman filed a cross-claim against defendants Silva for any amount that plaintiff might recover against the Batemans. The parties will hereinafter be identified either as plaintiff or defendants or by their respective names.

Two contracts were assigned to the plaintiff when Ralls and Bateman were partners operating as Wayne's Motor Sales. This partnership was orally dissolved on October 25, 1952, and on December 21, 1952, formal written agreement of dissolution was signed dissolving the partnership as of the former date. After the dissolution Bateman continued the operation of the business under the same name of Wayne's Motor Sales and on October 26, 1952, he assigned one of the contracts and on December 19, 1952 he assigned another contract. On January 13, 1953, Silva and Bate-

man formed a partnership and continued the operation under the name of Wayne's Motor Sales. A trust receipt covering a Ford pickup truck was executed by defendant Silva on January 16, 1953. Upon formation of the partnership between Bateman and Silva they entered into a flooring contract with plaintiff whereby Bateman and Silva in effect guaranteed the payment of the amounts due on contracts assigned to the plaintiff. By the terms of this agreement, plaintiff was to create a reserve account of a certain percentage of the amount borrowed which reserve account was to be placed to the credit of Wayne's Motor Sales. The five motor vehicles covered by the contracts and trust receipt were repossessed and sold by the plaintiff and this suit is to recover deficiencies.

The case was tried without a jury in November, 1954, before the Honorable Robert E. Yount. On December 31, 1954, he rendered a purported judgment for the plaintiff and against defendants and in favor of cross-complainants Bateman and Ralls against defendants Silva, the details of which are hereinafter set forth. Judge Yount's term of office expired the first Monday in January, 1955, and he was succeeded by the Honorable Warren McCarthy. After Judge McCarthy assumed office, the defendants Silva moved that the purported judgment of Judge Yount be vacated and for entry of a valid judgment "in accordance with the rules and statutes pertaining thereto". This motion was granted and Judge McCarthy ordered the entry of judgment hereinafter set forth. Defendants Silva appeal from this judgment and from order denying new trial.

Appellants' first complaint is that it was an abuse of discretion for Judge McCarthy to render judgment against them without hearing the evidence. The solution of this question is dependent upon the conditions under which the judge who succeeds in office the judge who tried the case may render a valid judgment without a trial de novo. The rule applicable to the problem reads:

"If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial." Section 21–1510, A.C.A.1939, Rule 63, Rules Civ. Proc.1956.

The "other disability" referred to in the rule includes retirement from office. 7

Moore's Federal Practice, par. 63.03, page 1453. Section 21–1510, supra, is in the exact language of Federal Rule 63, 28 U.S. C.A., which latter rule has been construed many times. Under federal practice if a judge who tries the case files any writing which could be construed as findings of fact and conclusions of law which would support a valid judgment, his successor may render judgment thereon. The Del-Mar-Va, D.C., 56 F.Supp. 743; Giffin v. Vought, 2 Cir., 175 F.2d 186. The trial judge under the federal rules in cases without a jury is required to find the facts specially and expressly state his conclusions of law. Rule 52(a), Federal Rules of Civil Procedure. In our state courts the trial judge is not required to specially find facts or state expressly his conclusions of law unless request is made therefor. Rule 52(a), Rules of Civil Procedure. When no request is made for such findings or conclusions, this court must assume the trial court found every controverted issue of fact necessary to sustain the judgment and, if there is reasonable evidence to support such findings, hold that it did so correctly. Sargent v. Sarival Storage Co., 28 Ariz. 152, 236 P. 468; Mead v. Hummel, 58 Ariz. 462, 121 P.2d 423.

The complaint prayed for an aggregate of $2,781.71 together with eight percent interest from the respective dates of the contracts and trust receipt on the respective amounts due on each. At the trial it was stipulated by all parties that the amounts prayed for were correct, except to the extent they were offset by the reserve account in possession of plaintiff and that the court was to try only the issue of who owed the same. The undisputed evidence is that the reserve is $128.80. At a pre-trial conference the defendants Silva admitted liability for the amount due on the Ford pickup truck in the sum of $324.98.

On December 16, 1954, Judge Yount entered the following minute order:

"It is Ordered that upon presentation of a formal written judgment, its approval and signing by the Judge, and the filing thereof with the Clerk of the Court, judgment will be rendered in favor of the Plaintiff and against the Defendants, and each of them."

On December 31st, he entered the following minute order:

"It is Ordered that the order for judgment made on December 16, 1954 in this cause be, and the same is hereby vacated, and the following order made in lieu thereof.

"It is Ordered for judgment for Plaintiff and against Defendants and for Counter-Claimant and against the Counter-Defendant, all in accordance with the formal written judgment and decree herewith presented.

"Formal written judgment and decree signed, settled and approved."

The written judgment signed on the same day as the last-mentioned minute order recites that the court found the issues in favor of plaintiff and against defendants and each of them and that plaintiff was entitled to recover from defendants $2,781.71 principal and $397.54 interest and ordered, adjudged and decreed that plaintiff recover $3,179.25 (the aggregate of principal and interest). This purported judgment likewise gave judgment in favor of defendants Bateman and Ralls and against defendants Silva on the cross-claim for a like amount. No disposition was made of the reserve in the sum of $128.80.

On the motion of the Silvas to enter a valid judgment Judge McCarthy vacated the orders and judgment of Judge Yount and directed judgment for the plaintiff against defendants in the sum of $3,179.25 on the complaint and in favor of defendants Bateman on their cross-claim against defendants Silva for a like amount.

It is clear from the foregoing that Judge McCarthy's judgment is in harmony with the decision of Judge Yount in every respect except that there was eliminated the judgment against defendants Silva in favor of defendants Ralls on the cross-claim. The latter judgment was clearly erroneous for the reason defendants Ralls filed no cross-claim against the Silvas. None of the judgments accounted for the reserve of $128.80.

Judge Yount by his action necessarily found all controverted issues of fact in favor of plaintiff and against defendants. and necessarily concluded as a matter of law that the plaintiff was entitled to recover an undisputed amount against defendants Silva on the complaint. He likewise necessarily found all disputed issues. of fact in favor of defendants Bateman on the cross-claim and necessarily concluded that they were entitled to recover the same amount on the cross-claim. Since all essential facts were found and there is no dispute as to the amount, we do not believe Judge McCarthy's judgment is invalid merely because he did not try the lawsuit. Under such a situation there is no occasion for a new trial on the facts. merely because the succeeding judge did not hear the evidence. Certainly, while a succeeding judge cannot weigh evidence that was taken before his predecessor and decide facts, there is no reason why he may not use such facts found by his predecessor in perfunctorily rendering the appropriate judgment. We will therefore test the validity of Judge McCarthy's judgment on the record of the trial before Judge Yount.

Defendants Silva make the following assignment of error:

"The Court erred in admitting incompetent evidence offered by Plaintiff

52

and Cross-Claimant to modify written agreements."

This assignment is insufficient to advise the court as to the evidence to which the assignment is directed. Moreno v. Russell, 47 Ariz. 38, 53 P.2d 411. In arguing the proposition of law applicable to this assignment, we are directed to pages 116, 117 and 118 of the reporter's transcript wherein plaintiff testified to a conversation with Silva at the time the flooring agreement was consummated. We find no other reference to any testimony to which the assignment is directed. We have examined the portion of the transcript to which reference is made and are unable to discover any objection to the admission of this testimony upon the ground that it violated the parol evidence rule. Therefore, we will not pass upon the assignment.

It is contended by defendants Silva that there is no competent evidence that would legally authorize a judgment against them either in favor of plaintiff or cross-claimants Bateman since the obligations upon which the judgments were based were incurred prior to the time Silva was connected with the partnership. We will consider first the obligation, if any, to the plaintiff. There is ample evidence from which the trial court could find that when plaintiff entered into the new agreement with Bateman and Silva to floor cars for the new partnership, plaintiff required as a condition precedent to advancing money under the new flooring agreement that the new partnership assume the obligations to plaintiff incurred prior to the formation of the new partnership. He testified that Silva agreed to this. Some of Silva's conduct is not in harmony with his claim that he had no obligation under former contracts. Silva and his employee went to California and repossessed one of the cars, an act not ordinarily performed by one who has no interest in collecting the purchase price. Another of the cars was repossessed by Silva's employee and placed on the lot of Wayne's Motor Sales. Silva says the flooring agreement makes no reference to previously assigned sales contracts. This statement is not accurate. In the flooring agreement Silva and Bateman guaranteed that in consideration of plaintiff flooring cars which are covered by conditional sales contracts, they would pay all balances due on the cars and contracted that the guarantee "shall cover every automobile heretofore or hereafter floored". None had theretofore been floored by Silva and Bateman. If this provision means anything, it would have to refer to cars theretofore floored by Wayne's Motor Sales.

We think the judgment in favor of the Batemans on their cross-claim is dependent upon whether the court could legally find that when Silva and Bateman dissolved their partnership, Silva agreed with Bateman that Silva would pay these obligations incurred before they formed their

partnership. In this connection, there are two written instruments. One was in the handwriting of Silva, dated February 24, 1953, signed by both parties and reads:

"I Dr. A. J. Silva agree to pay Wayne Bateman $500.00 in cash—take over Ernie Ralls note of $2,000.00. I also agree to credit note for $1500.00 made to Dr. A. J. Silva.

"Also to take over responsibility of Arizona Credit Corporation, Budget finance of Mesa.

"I, Dr. A. J. Silva *is* not *responsibility* for all personal debts incurred by Wayne Bateman except those stated above that I agree to pay."

In the second instrument dated four days later Silva assumed and agreed to pay all obligations of the partnership. No mention is made of the special items set forth in the first writing. Silva takes the position that any liability to Bateman must be found, if at all, in these two instruments. There is nothing in the second agreement that could be construed to impose such liability unless it can be said that by reason of the agreement with plaintiff that the new partnership would assume the former Wayne Motor Sales' obligations, the latter were placed in the category of debts of the new partnership. In any event, Silva's liability may be tested by what is meant in the first writing wherein he agrees "to take over

responsibility of Arizona Credit Corporation". Both parties submitted oral testimony as to what was meant when they used that terminology. Silva testified in effect that it was not intended to include an obligation to Arizona Credit Company incurred prior to the formation of the Silva-Bateman partnership. Bateman testified in effect that it was understood when the writing was executed that Silva was to take over all responsibilities of Bateman's debts to Arizona Credit. We believe that in view of this testimony the trial court was warranted in finding that when Silva agreed to take over the responsibility of Arizona Credit Company, he intended to and did agree to pay obligations due the plaintiff incurred by Bateman prior to their entering into business together.

Defendants Silva say that Judge Yount did not dispose of the reserve in the sum of $128.80. There is no dispute as to the correctness of this amount and it should be deducted from the judgment. While Judge McCarthy did not make such deduction, there is no reason why this court should not deduct the same. If the facts are undisputed, this court will direct the rendition of the correct judgment. A. R.S.1956, § 12–2103.

The judgment must be modified by deducting therefrom the sum of $128.80 and

as modified is affirmed, with directions that the trial court enter the modified judgment accordingly.

LA PRADE, C. J., and UDALL, PHELPS and STRUCKMEYER, JJ., concur.