[Civil No. 3305. Filed December 9, 1933.]

[27 Pac. (2d) 682.]

CONCRETE MACHINERY & SUPPLY COMPANY, a Corporation, and JOHN SCARLETT, Appellants, v. J. WILLIAM WAARA, Appellee.

Messrs. Clark & Clark, for Appellants.

Mr. Louis H. Bunte, for Appellee.

LOCKWOOD, J.—J. William Waara, hereinafter called plaintiff, brought suit against John Scarlett, Roy H. Heartman and Yavapai Gold Mining Co., Limited, a corporation, the latter hereinafter called the company, for services which plaintiff alleged he had rendered at the special instance and request of defendants, and each of them, of the value of $1,309.20. The company and Scarlett were served personally in Yavapai county. No summons was ever served upon Heartman nor did he enter an appearance in the case, and no judgment was rendered against him. On the same day that the summons was served, a writ of attachment was levied on certain mining equipment and machinery located in Yavapai county and then in the possession of either Scarlett individually or of the company. The Concrete Machinery & Supply Company made claim to part of

the machinery levied upon, and gave bond in the manner prescribed by article 10, chapter 93, Revised Code 1928 (section 4368 et seq.), and at the same time Equitable Finance Corporation made claim in the same manner to another portion of such machinery. A few days later Scarlett gave a bond in release of the attachment on the remaining part of the property. Thereafter both the company and Scarlett answered, denying any indebtedness to plaintiff. By stipulation of counsel the two proceedings to determine the ownership of the attached property and the main action were consolidated for the purpose of trial and heard by the court sitting without a jury, and judgment was rendered in the main action against Scarlett and the Yavapai Gold Mining Co., Ltd., jointly and severally, in the sum of $1,309.20, with interest, and in the other two ancillary actions against Concrete Machinery & Supply Company and surety in the sum of $1,500, with interest and 10 per cent. damages and costs, and against Equitable Finance Corporation in the sum of $400, with interest and 10 per cent. damages and costs. The Yavapai Gold Mining Co., Ltd., and Equitable Finance Company did not appeal from the judgments against them, and the latter paid the judgment rendered against it, amounting to the principal sum of $400, with interest and the 10 per cent. damages and costs assessed thereon in accordance with the statute; this appeal being taken only by Scarlett and the Concrete Machinery & Supply Company.

There are some five assignments of error which raise in substance three questions of law. The first is whether or not the evidence sustains the judgment as against Scarlett; the second whether or not the evidence sustains the judgment against Concrete Machinery & Supply Company; and the third whether judgments could properly be rendered which as

against all of the parties aggregate some $3,000, when the original claim was for the sum of $1,309.20 only.

In order that we may answer these questions, it is necessary that we make a brief statement of the ultimate facts in the case. In so doing we must, of course, interpret the evidence in the most favorable light in support of the judgment rendered by the trial court and the findings of fact either made by it or necessarily implied to support the judgment. *Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587; *Thomas* v. *Newcomb,* 26 Ariz. 47, 221 Pac. 226; *First Baptist Church* v. *Connor,* 30 Ariz. 234, 245 Pac. 932.

Thus considered, the evidence may be said to support the following facts: Yavapai Gold Mining Co., Ltd., was a foreign corporation which owned certain mining claims in Yavapai county, but had not until after the filing of this action complied with the provisions of section 657, Revised Code 1928, which requires all foreign corporations, with certain named exceptions, to perform certain acts before they are permitted to do any business within the state of Arizona. Defendant Heartman was on the twelfth day of August, 1931, the general manager of the company, and defendant Scarlett had been employed by it as its local superintendent in Yavapai county. On that day Heartman telegraphed plaintiff asking him to meet them at Congress Junction in Yavapai county to confer in regard to some work. On August 19th plaintiff, Heartman, and Scarlett met on the company's property, and plaintiff was employed by them to do certain work in connection with various mining claims and the developing of water necessary to work the claims; no mention being made of the company. From that time on until the 19th of November plaintiff performed services in connection with these matters, the reason-

able value of which, according to his testimony, was the amount sued for, plus $50 which he received on account. He rendered a bill for these services to all three of the defendants, the company, Heartman, and Scarlett, stating later as his reason therefor that the company was not authorized to do business legally in the state, and that he knew Heartman and Scarlett were responsible for the work. Apparently from plaintiff's testimony the interests of Heartman, Scarlett and the company were so intermixed that it was difficult to state just who was the owner of the property on or for which he did work at the particular time the work was done, though it was understood that ultimately the company would probably secure title to all the property.

When the claim of the Concrete Machinery & Supply Company to the attached property was tried out, Scarlett was the only witness on behalf of the claimant. He testified in substance that the property belonged to the claimant, and that he had merely leased it. It appears, however, that, when he accepted the position as superintendent of the company, he entered into a written contract with it wherein he represented that he was the owner of the attached equipment and machinery. It further appears that the property was brought to Arizona with the knowledge of the claimant and placed on the claims in Yavapai county and left there in the possession of either Scarlett or the company without any contract or lease being filed in Arizona. He also stated that the claimant had allowed him to take the property out of the state without paying therefor because his credit with them was good, and that he had promised to pay the full price to the claimant for the machinery; any sums that he paid as rental applying on the purchase price. It also appears that, before the machinery was taken from the possession of the claimant in Los Angeles to be brought to Arizona,

it had caused to be painted upon the large pieces the name "Yavapai Gold Mining Co., Ltd.," and had placed thereon a smaller sign which said, "Sold by the Concrete Machinery & Supply Company of Los Angeles." This was in substance all the testimony in support of claimant's ownership of the property.

The company did not appeal from the judgment rendered against it. We must therefore assume that such judgment is correct and binding. *Town of Flagstaff* v. *Gomez,* 23 Ariz. 184, 202 Pac. 401, 23 A. L. R. 661; *United States Fidelity & Guaranty Co.* v. *Industrial Com., ante,* p. 422, 26 Pac. (2d) 1012.

It is a reasonable deduction from the foregoing facts that plaintiff was employed in the first place by defendants Scarlett and Heartman individually, and that the credit was extended to them. Such being the case, we need not consider the question of whether Scarlett as a matter of law was obligated individually for a contract made by him as an officer of the company and on its behalf before it had become authorized to do business in Arizona. If, as plaintiff testified, and as was found by the trial court, the work was performed at the request of Scarlett and for him individually, the latter would be responsible therefor. It is true Scarlett denies that he ever employed plaintiff individually, but this was a matter for the trial court to determine on conflicting evidence, and we cannot disturb its findings in that respect. The judgment against the defendant Scarlett must therefore be sustained.

We consider then whether the judgment against the claimant Concrete Machinery & Supply Company is sustained by the law and the evidence. Under article 10, *supra,* when a third party claims property seized under attachment, and the property at the time of the seizure was taken from the possession of any person except the claimant, the burden of proof of ownership is upon the claimant. Section 4375,

Rev. Code 1928. In the present case it is true Scarlett testified the property was owned by the claimant, and that he and the company merely had it under lease. In view, however, of his admissions made both on the stand and by his written and recorded contract with the company, and in further view of the fact that claimant had painted the name of the company on some of the machinery and affixed signs representing it as sold before it was brought to Arizona, we are of the opinion that the trial court was justified in refusing to believe his testimony that the claimant owned the property in question, and, if this be so, the latter has failed to sustain the burden of proof imposed on it by the statute. Therefore, under the express provisions of section 4376, Revised Code of 1928, judgment was properly rendered against it and its surety for the value of the property as fixed by the sheriff, together with interest and 10 per cent. damages.

Counsel for claimant has cited to us many authorities to the effect that an attaching creditor takes only the interest of the judgment debtor in the property. These authorities are in point if it is admitted that the judgment debtor does not own the property *in toto,* but, where it is claimed that he does so own it, and where the statute provides a specific method for anyone contending to the contrary to prove his claim, and when such claimant fails to make the proof required, we cannot see where the authorities cited have any bearing upon the case.

The last contention is that plaintiff is not entitled to judgment against all of the parties in the amount rendered. The judgments rendered were in strict accordance with the provisions of the statute, but it is admitted by plaintiff that he may not recover altogether more than the amount awarded as against the principal defendants, with legal interest, plus the statutory damages awarded against each of the

claimants and their sureties. We think the position of plaintiff is sound. The judgments as against the two claimants in effect established a fund from which his principal judgment could be collected. In addition, the statute allows him 10 per cent. on the fund so established, evidently by way of compensation to him for the expense of litigating his right to the attached property as against the claimants. We think, therefore, that the plaintiff is entitled to collect (a) the statutory penalty from each individual claimant as fixed by the trial court; (b) so much of his principal judgment, with interest thereon at 6 per cent. per annum, from each and all of the claimants and the principal debtors, as is not in excess of the judgments rendered against each one of them. When the total of such collections, not including the statutory penalty, reaches the amount of the judgment against the principal debtors, with interest, no more can be collected from any of the judgment debtors.

The judgment of the superior court of Yavapai county is therefore affirmed.

ROSS, C. J., and McALISTER, J., concur.